United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GERALD LEN COOLEY,**<br>Plaintiff**,**<br>vs.<br>**CITY OF WALNUT CREEK, ET AL.,**<br>Defendants**.** | CASE NO. 18-cv-00719-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 18, 25 |

*Pro se* plaintiff Gerald Len Cooley brings this civil rights action against defendants the City of Walnut Creek (the "City"), unnamed Walnut Creek Police Department ("WCPD") officers ("WCPD Does 1-10"), the County of Contra Costa (the "County"), deputy district attorney Alison Chandler ("DDA Chandler"), and district attorney Mark Peterson ("DA Peterson") pursuant to 42 U.S.C. section 1983 ("Section 1983") for violation of his constitutional rights. (*See generally* Third Amended Civil Rights Complaint ("3AC"), Dkt. No. 27.)

Now before the Court are: (1) the County's, DDA Chandler's, and DA Peterson's (together, the "County Defendants") motion to dismiss the 3AC pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 18 ("County Defendants' MTD")); and (2) the City's motion to dismiss the 3AC pursuant to Rule 12(b)(6) and for a more definite statement pursuant to Rule 12(e) (Dkt. No. 25 ("City's Motion")).[1]

---

[1] The Court previously vacated the hearings on the two motions. (*See* Dkt. No. 26.)

Also pending before the Court is plaintiff's motion for leave to file a fourth amended complaint. (Dkt. No. 43 ("Motion for Leave"); *see also* Dkt. No. 43-1 ("Proposed 4AC").) As this Order allows plaintiff to amend certain of his claims, plaintiff's proposed substantive amendments included in his Proposed 4AC—namely his addition of "Walnut Creek Police Detective Greg Leonard" (herein "Det. Leonard") as a defendant and plaintiff's new claim against DDA Chandler for defamation—are addressed herein to provide further guidance to plaintiff as he prepares his next amended complaint and for the sake of efficiency. (*See infra* nn. 4, 9, 15.) Accordingly, plaintiff's Motion for Leave is **DENIED AS MOOT**, and the hearing on the same,

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** the County Defendants' and City's motions.[2]

## I. BACKGROUND

Plaintiff filed the initial complaint in this action on February 1, 2018. (Dkt. No. 1.) On March 9, 2018, he filed an amended complaint. (Dkt. No. 8.) The case was subsequently reassigned to the undersigned on March 21, 2018, and plaintiff thereafter filed a motion for leave to file a second amended complaint, which this Court granted. (Dkt. Nos. 12, 13, 15.) On March 29, 2018, DDA Chandler and the County file their motion to dismiss, and plaintiff filed a motion for leave to file the operative 3AC two weeks later. (Dkt. No. 23). On April 23, 2018, the City filed its motion to dismiss and for a more definite statement. The following day, the Court granted plaintiff's motion for leave to file the 3AC and, in light of the City's motion and because the 3AC tracked the prior complaint with the exception of two added paragraphs regarding DA Peterson, the Court allowed defendants to file supplements to their pending motions, rather than entirely new motions to dismiss. (Dkt. No. 26.)[3] The Court afforded plaintiff the opportunity to respond to the County Defendants' and the City's supplemental filings.

In the 3AC, plaintiff alleges that he was arrested on October 5, 2016 by WCPD Does 1-10 for being an accessory to murder after the fact in violation of California Penal Code ("Penal Code") section 32. (3AC at 2.)[4] Due to "unreasonable pressure from [WCPD Does 1-10],"

---

currently set for January 22, 2019, is **VACATED**.

[2] The Court notes that the City's footnotes in its briefs do not comport with Civil Local Rule 3-4(c), which provides that printed text, including footnotes, "may not be smaller than *12-point standard font*[.]" (emphasis supplied). The City is hereby warned that future use of a smaller font size to avoid page limitations will result in the striking of the filing.

[3] DA Peterson joined the County's and DDA Chandler's motion to dismiss upon the filing of their supplemental brief and is thus treated as a moving party.

[4] The Court notes that plaintiff's Proposed 4AC references "City of Walnut Creek Police Detective Does 1-10" rather than "City of Walnut Creek Police Officer Defendants Does 1-10." (*Compare* Proposed 4AC at 1 ¶ 1 *with* 3AC at 1 ¶ 1.) This previewed change in the reference has no impact on the Court's analysis herein and will be permitted in plaintiff's fourth amended complaint.

As for plaintiff's proposed addition of Det. Leonard as a defendant, the Court deems this a permissible change in plaintiff's forthcoming fourth amended complaint as it evinces plaintiff's

plaintiff alleges that DDA Chandler thereafter filed a felony complaint against him, which stated that plaintiff knowingly drove the shooter away from the scene of the murder. (*Id.*)

Plaintiff asserts claims against WCPD Does 1-10 and DDA Chandler for malicious prosecution in violation of his Fourth Amendment rights. (*Id.* at 1 ¶ 1.) Specifically, he alleges that DDA Chandler conspired with WCPD Does 1-10 to "knowingly withhold cellphone records that [WCPD Does 1-10] obtained during their investigation, specifically, cellphone pings that exonerated [p]laintiff." (*Id.* at 2.) Plaintiff was incarcerated for approximately four months and alleges that he was "prosecuted with malice and without probable cause . . . ." (*Id.*) According to plaintiff, "[DDA] Chandler's decision to file charges and suppress exonerating evidence in [p]laintiff's favor was the direct result of unreasonable pressure by the [WCPD Does 1-10]." (*Id.* at 3.) The criminal case against plaintiff was ultimately dismissed on May 22, 2017. (*Id*).

In regard to the County, plaintiff claims that it "has a longstanding practice, pattern[,] policy[,] or custom of allowing [its] deputy district attorneys to file felony and misdemeanor criminal charges against defendants without probable cause and maliciously prosecute them." (*Id.*) DA Peterson allegedly "implemented a practice, policy[,] or custom of withholding *Brady* evidence and failed to train or retrain his deputy district attorneys to disclose exonerating evidence." (*Id.*)

As to the City, plaintiff alleges that it has a "longstanding practice, pattern[,] policy[,] or custom of allowing [its] police officers to arrest citizens without probable cause and maliciously prosecute them" for "violent crimes such as murder and assault." (*Id.*) Plaintiff asserts that the City's "indifference stems from an entrenched posture of deliberate indifference to the constitutional right of primarily the minority citizens who live or visit the City of Walnut Creek." (*Id.*)

---

efforts to identify unknown WCPD Does 1-10. However, because the Proposed 4AC groups Det. Leonard with "Walnut Creek Police Detective Does 1-10," the Court's analysis herein regarding WCPD Does 1-10 should inform plaintiff's claims as to these defendants in plaintiff's fourth amended complaint.

3

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the plaintiff has stated a claim, a court must assume that plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B. Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion filed pursuant to Rule 12(e) "must point out the defects complained of and the details desired." *Id.* Generally, "[m]otions for a more definite statement are viewed with disfavor, and are rarely granted." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). For example, "[s]uch a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *True v. Am. Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1180 (C.D. Cal. 2007) (internal quotation marks omitted). By contrast, "[a] Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made." *Sagan v.*

4

*Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

**III. DISCUSSION**

### A. Overview

Section 1983 provides a cause of action against any person, including municipalities, counties, and subdivisions thereof, for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To prevail on a Section 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution; (2) by any person acting under the color of state law. 42 U.S.C. § 1983.

Local government entities, however, cannot be held liable under Section 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. In other words, local government entities may only be sued under Section 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.* at 694. Accordingly, to prevail on a Section 1983 claim against a local government entity, plaintiffs must sufficiently allege that:

> (1) they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount[] to deliberate indifference to their constitutional rights; and (3) that these policies are the moving force behind the constitutional violation[s].

*Lee v. City of L.A.*, 250 F.3d 668, 681–82 (9th Cir. 2001) (alterations in original) (internal quotation marks omitted).

### B. Section 1983 Malicious Prosecution Claim Against DDA Chandler and WCFPD Does 1-10

Plaintiff alleges malicious prosecution against DDA Chandler and WCPD Does 1-10 in violation of his Fourth Amendment rights. To establish a malicious prosecution claim under Section 1983, a plaintiff must allege: (1) the initiation of a prosecution which ended in a

termination favorable to the plaintiff; (2) lack of probable cause; (3) malice; and (4) that the prosecution was done for the purpose of denying the plaintiff's constitutional rights. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Usher v. City of L.A.*, 828 F.2d at 562. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted from the initiation of proceedings." *Awabdy*, 368 F.3d at 1067. "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id*.

The County Defendants contend that DDA Chandler is "absolutely immune" from liability for plaintiff's malicious prosecution claim. (County Defendants' MTD at 5.) As for WCPD Does 1-10, the City argues that plaintiff's claim against them fails for several reasons, namely that plaintiff: (1) cannot base a Section 1983 malicious prosecution claim on an allegation that exculpatory evidence was withheld during a criminal prosecution; (2) fails to allege specific facts rebutting the presumption of prosecutorial independence; and (3) fails to plead sufficiently either that he was prosecuted with malice, that the criminal action against him was terminated in his favor, or how he was prosecuted without probable cause.[5] The Court addresses each argument in turn.[6]

---

[5] The Court notes that WCPD Does 1-10 are named as defendants in both their individual and official capacities. (3AC at 1 ¶ 1.) While neither the City nor plaintiff has briefed the issue, and the Court takes no position on the matter in this Order, plaintiff should consider whether it is appropriate to name WCPD Does 1-10 in their official capacities, while simultaneously naming the City, before filing his fourth amended complaint. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

[6] The City argues that plaintiff's failure to respond specifically to each of its arguments should be considered a concession by plaintiff that he does not oppose those arguments. (City's Reply Brief ISO FRCP 12(b)(6) Motion to Dismiss Plaintiff's 3AC ("City's Reply") at 1–2, 5–6, Dkt. No. 39.) Although the City is correct that plaintiff's failure to respond may be construed as a concession, the Court addresses the merits of the City's arguments, in part, because *pro se*

Initially, the County Defendants are correct that plaintiff's claim for malicious prosecution against DDA Chandler is barred under the doctrine of prosecutorial immunity, but only as asserted against her in her *individual capacity*. *See, e.g., Ismail v. Cty. of Orange*, 917 F. Supp. 2d 1060, 1067–68 (C.D. Cal. 2012). This immunity applies to conduct "intimately associated with the judicial phase of the criminal process," and protects prosecutors when they perform traditional activities related to the initiation and presentation of criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *accord Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005). Because plaintiff's allegations against DDA Chandler relate to her "decision to file charges and suppress exonerating evidence in plaintiff's favor" (3AC at 3), they pertain to actions undertaken by a prosecutor in advance of a criminal prosecution. Accordingly, DDA Chandler is entitled to absolute prosecutorial immunity with respect to plaintiff's Section 1983 malicious prosecution claim against her in her individual capacity. *Cf. Ohman v. Cty. of Orange*, 460 F. App'x 649, 650 (9th Cir. 2011) (affirming district court's dismissal of Section 1983 action on grounds of absolute prosecutorial immunity for "filing of charges on the basis of evidence in the file").[7]

Plaintiff's Section 1983 malicious prosecution claim against DDA Chandler in her *official*

---

plaintiffs are afforded greater leniency than other litigants in amending their complaints.

[7] Plaintiff's argument that "Chandler's failure to disclose exonerating evidence . . . was not intimately associated with the judicial process," (Plaintiff's Opposition to County Defendants' Supplemental Motion to Dismiss ("Opp. to County Defendants' Suppl. Br.") at 3, Dkt. No. 36), is unavailing. *See, e.g., Imbler*, 424 U.S. at 431 n.34 (absolute immunity for prosecutor's "deliberate withholding of exculpatory information" and role in allegedly suborning perjury); *Broam v. Bogan*, 320 F. 3d 1023, 1030 (9th Cir. 2003) (absolute immunity for prosecutor's exercise of discretion in regulating flow of information to defense, including for "deliberate withholding of exculpatory information") (quoting *Imbler*, 424 U.S. at 431–32 n.34). To the extent plaintiff claims that DDA Chandler is liable for conspiring with WCPD Does 1-10, absolute prosecutorial immunity would also bar that claim. *See Ashelman v. Pope*, 793 F.2d 1072, 1075–78 (9th Cir. 1986) (prosecutorial immunity extends to claim of conspiracy to predetermine outcome of trial); *Ismail*, 917 F. Supp. 2d at 1068 ("[A]bsolute immunity extends to prosecutorial acts that involve malice, bad faith, or conspiracy . . .) (citing *Ashelman*).

In addition, plaintiff's argument that the County Defendants' motion to dismiss with respect to DDA Chandler should be denied because plaintiff "intends to rebut Chandler's independent judgment to file charges," (Plaintiff's Opposition to County's MTD ("Opp. to County Defendants' MTD") at 2, Dkt. No. 20), is based on a flawed understanding of the presumption of prosecutorial independence, which precludes liability for *other individuals* who participated in the investigation or filed a report that resulted in the initiation of proceedings. (*See supra* at 6.)

*capacity* fares no better.[8]  As set forth above, plaintiff's claims against DDA Chandler all appear to pertain to her actions in prosecuting criminal charges against plaintiff.  In California, a deputy district attorney acts on behalf of the state when preparing for, and conducting, criminal prosecutions.  *See People v. Garcia*, 39 Cal. 4th 1070, 1081 (2006) (noting the district attorney's office represents the State of California in criminal prosecutions); *see also Goldstein v. City of Long Beach*, 715 F.3d 750, 759 (9th Cir. 2013) ("It is clear that the district attorney acts on behalf of the state when conducting prosecutions . . . ."); *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1030 (9th Cir. 2000) ("[U]nder California law[,] a county district attorney acts as a state official when deciding whether to prosecute an individual.").  In addition, the Eleventh Amendment bars a plaintiff's federal civil rights claims for monetary damages against a state official in her official capacity.  That is, the Eleventh Amendment "bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages . . . ."  *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988).  To overcome this Eleventh Amendment bar, the state's consent or Congress's intent must be "unequivocally expressed."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in *federal* court.  *See BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1396 (9th Cir. 1988).  Finally, Congress has not repealed state sovereign immunity against suits brought under Section 1983.  Accordingly, plaintiff may not seek monetary damages against DDA Chandler in her official capacity arising from her actions in prosecuting plaintiff.  Plaintiff's Section 1983 malicious prosecution claim against DDA Chandler is thus **DISMISSED WITH PREJUDICE**.[9]

---

[8] As explained previously, (*see supra* n.5), the Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166.  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  *Id.*

[9] As previously mentioned, plaintiff's Proposed 4AC adds a claim for defamation against DDA Chandler.  (*See* generally Proposed 4AC.)  While it is unclear whether the Proposed 4AC asserts this claim against DDA Chandler in her individual or official capacity, it fails in any event.  First, the alleged defamatory statements were made during a court proceeding and in furtherance of DDA Chandler's prosecution of the charges against plaintiff.  (*See* Proposed 4AC at 2 ¶ 2, 3, 4.)

8

Next, the Court disagrees with the City's contention that a plaintiff's malicious prosecution claim cannot be based on an allegation that exculpatory evidence was withheld during a criminal prosecution. (*See* City's Motion at 10.) A claim for malicious prosecution may be stated not only against prosecutors but also police officers and investigators who wrongfully caused the plaintiff's prosecution, such as by "knowingly provid[ing] misinformation . . . , *conceal[ing] exculpatory evidence*, or otherwise engag[ing] in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067 (emphasis supplied); *see also Trulove v. City & Cty. of S.F.*, No. 16-050-YGR, 2016 WL 5930634, at *8 (N.D. Cal. Oct. 12, 2016). However, the Court agrees with the City that, *to the extent plaintiff's malicious prosecution claim arises from his substantive due process rights under the Fourteenth Amendment*, the claim fails. *Awabdy* held that Section 1983 malicious prosecution claims cannot be based on a violation of an individual's substantive due process rights, namely:

> The principle that *Albright* establishes is that no substantive due process rights exist under the Fourteenth Amendment to be free from prosecution without probable cause. . . . In rejecting Albright's reliance on substantive due process as the basis for his malicious prosecution claim, the plurality explained: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment', not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." . . . In *Albright*, the plurality suggested that the plaintiff in that case might have set forth a proper § 1983 claim had he argued that the state's pretrial deprivations of his personal liberty violated the Fourth Amendment.

468 F.3d at 1069 (citations omitted); *see also Dinius v. Perdock*, No. C 10-3498 MEJ, 2012 WL 1925666, at *12 (N.D. Cal. May 24, 2012) (noting *Awabdy* bars a Section 1983 malicious prosecution claim based on claimed substantive due process rights); *Hill v. Clovis Police Dep't*, No. 1:11-cv-1391 AWI SMS, 2011 WL 5828224, at *4 (E.D. Cal. Nov. 18, 2011) ("If [plaintiff] is attempting to rely on substantive due process, then his reliance is misplaced because there is no

---

Accordingly, DDA Chandler is entitled to prosecutorial immunity to the extent the proposed defamation claim is asserted against her in her individual capacity. Second, to the extent it is asserted against DDA Chandler in her official capacity, the Eleventh Amendment bars the claim as it pertains to DDA Chandler's actions in prosecuting criminal charges against plaintiff, which were carried out on behalf of the state. Because plaintiff's proposed amendment would be subject to dismissal for the forgoing reasons, it must be denied. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). **Plaintiff may not add a claim for defamation against DDA Chandler in his fourth amended complaint**.

substantive due process right to be free from malicious prosecution."). Accordingly, only to the extent plaintiff's malicious prosecution claim is based on a violation of his substantive due process rights under the Fourteenth Amendment, it is not actionable and is thus **DISMISSED WITHOUT LEAVE TO AMEND**. However, because plaintiff's claim appears to be based on an alleged lack of probable cause to prosecute, the Court proceeds with its analysis accordingly.[10]

The City contends that dismissal of plaintiff's malicious prosecution claim against WCPD Does 1-10 is required because there are no allegations that would overcome the presumption of prosecutorial independence, including "specific facts indicating what the pressure is and how it was actively instrumental in causing the initiation of legal proceedings." (City's Motion at 5–6 (internal quotation marks omitted).) The City does not persuade. As plaintiff correctly notes, "the presumption of independent prosecutorial judgment in the charging decision is an *evidentiary presumption applicable at the summary judgment stage to direct the order of proof; it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place . . . .*" *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (emphasis supplied) (reversing district court's order dismissing complaint for failure to plead specific facts to overcome presumption of prosecutorial independence; explaining that "the district court should not have converted an evidentiary presumption applicable to the order of proof into a heightened standard for pleading"); *see also* Dkt. No. 37 at 5.[11] Thus, contrary to the City's argument, plaintiff is not required at this stage to rebut the presumption of prosecutorial independence in order to allege properly a claim for malicious prosecution.[12]

---

[10] While plaintiff alleges that he was prosecuted by WCPD Does 1-10 without probable cause, he does not appear to make any allegation that he was *arrested* by WCPD Does without probable cause, although that apparently serves as a basis for his *Monell* claim against the City.

[11] In *Galbraith*, the Ninth Circuit applied the pleading standard articulated by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), and not the *Twombly/Iqbal* standard, which came about several years later. Nevertheless, it does not necessarily follow that the Ninth Circuit' statement in *Galbraith* regarding the presumption of independent prosecutorial judgment—*i.e.*, that it is to be applied at the summary judgment stage, and not the pleading stage—no longer has any force. *Twombly/Iqbal* focused on specificity, not on the applicability of presumptions.

[12] The City cites this Court's decision in *Adamson v. City & County of San Francisco*, No. 16-cv-04370, 2018 WL 1456761 (N.D. Cal. Mar. 23, 2018) to argue that "it is clear that even at

10

Plaintiff's malicious prosecution claim against WCPD Does 1-10 nevertheless fails. First, plaintiff fails to plead sufficient facts to support a finding that WCPD Does 1-10 maliciously prosecuted him without probable cause. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (holding claim of malicious prosecution requires showing that plaintiff was "prosecuted without probable cause"). Plaintiff offers no factual allegations to support his conclusory assertions. Plaintiff merely alleges that he was "prosecuted . . . without probable cause before being released." (3AC at 2.) Such a bald allegation is insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678 (holding "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice" to state a valid claim for relief; further holding courts are "not bound to accept as true a legal conclusion couched as a factual allegation").[13] Plaintiff must allege why the case initiated against him was objectively untenable. *See Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 497–98 (1998).

Similarly, plaintiff's allegation that he was "prosecuted with malice," (3AC at 2), is conclusory and inadequate to state a claim. Aside from his allegation regarding the withholding of exculpatory evidence, plaintiff does not describe any specific facts to make it plausible that WCPD Does 1-10 acted for an improper purpose unrelated to bringing a "perceived guilty person to justice . . . ." *Downey Venture*, 66 Cal. App. 4th at 494; *see also Moore v. City of Oakland*, No. 14-cv-05637-JSC, 2015 WL 333058, at *3 (N.D. Cal. Jan. 23, 2015) ("Plaintiff has alleged only

---

the pleading stage, a [p]laintiff must specifically *allege* how the presumption of prosecutorial independence is rebutted, in order to sufficiently state a claim for § 1983 [m]alicious [p]rosecution." (City's Reply at 4 (emphasis in original).) While this Court in *Adamson* did, indeed, determine that the allegations at issue were sufficient, if proven, to rebut the presumption of prosecutorial independence, the Court did not hold that the plaintiff's failure in this regard would have required dismissal. The City's reliance on *Oceanside Organics v. County of San Diego*, No. 15-cv-854 JLS (MDD), 2018 WL 1156431 (S.D. Cal. Mar. 5, 2018) is also misguided, notwithstanding *Galbraith*. Specifically, the court there noted: "Plaintiffs allege only that '[c]riminal charges were rejected.' . . . There are no additional factual allegations about the criminal charges; there is nothing about the circumstances of the prosecution, at what stage in the proceedings the criminal charges were rejected, or even what charges [plaintiffs] received." *Id.* at *14 (internal citation omitted). The same cannot be said of plaintiff's allegations in the instant case.

[13] *Cf. Galbraith*, 307 F.3d at 1126–27 (holding plaintiff provided sufficient facts to state claim for malicious prosecution, where plaintiff identified false statements defendant allegedly provided to prosecutor that were material to prosecutor's finding of probable cause).

11

that the officers 'act[ed] with malice' in initiating the charges against him . . . , which is not enough."). In a similar vein, plaintiff offers no more than conclusory allegations to show that WCPD Does 1-10 acted for the purpose of denying him his constitutional rights. (*See* 3AC at 3 ("[WCPD Does 1-10] . . . violated plaintiff's constitutional rights for the sole purpose of denying the [p]laintiff of his liberty interests.").) Such conclusory allegations are insufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Moreover, plaintiff's bare allegation that "the felony charges were dismissed against [him]," (3AC at 3), without more, does not show that the underlying matter terminated in his favor. *See Awabdy*, 368 F.3d at 1068 ("[A] dismissal in the interests of justice satisfies [the favorable termination] requirement *if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant*.") (emphasis supplied); *see also Fetters v. Cty. of L.A.*, 243 Cal. App. 4th 825, 844 (2016) ("California courts have consistently held that favorable termination in the context of a malicious prosecution action requires plaintiff to show more than a mere dismissal of the underlying action; he or she must show facts establishing his or her innocence."). Plaintiff's failure to allege these necessary elements is fatal to his malicious prosecution claim against WCPD Does 1-10.

Accordingly, plaintiff's Section 1983 malicious prosecution claim as asserted against WCPD Does 1-10 is **DISMISSED**. However, the Court gives plaintiff **LEAVE TO AMEND**, to allow him the opportunity to plead additional facts in support of this claim.[14] As for plaintiff's Section 1983 malicious prosecution claim as asserted against DDA Chandler, that claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### C. Section 1983 *Brady* Claim Against DA Peterson

With regard to DA Peterson, plaintiff does not allege that he was directly involved in plaintiff's prosecution, but sues him in his supervisory role, for implementing an alleged custom, policy, or practice of withholding *Brady* material in criminal cases and failing to train his deputy

---

[14] As defendants note, the 3AC is plaintiff's fourth complaint filed in this action. However, this Order constitutes the Court's first substantive ruling regarding the sufficiency of plaintiff's claims, and the Court cannot say at this at this time that leave to amend would be futile.

12

district attorneys to disclose exonerating evidence. (*See* 3AC at 3–4; *see also* Opp. to County Defendants' Suppl. Br. at 2.)[15] Plaintiff does not dispute that he is suing DA Peterson in his *individual capacity* only. As explained previously, district attorneys are entitled to absolute prosecutorial immunity for conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430; *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citing *Imbler*). In *Van de Kamp*, the Supreme Court held that supervising attorneys in their obligations to disclose evidence, where the decisions are linked to the prosecution of the plaintiff and necessarily require legal knowledge and the exercise of related discretion, is an example of such conduct. 555 U.S. at 341–43.[16]

Plaintiff complains only about an alleged policy promulgated by DA Peterson of not disclosing *Brady* evidence, and DA Peterson's purported failure to train deputy district attorneys regarding disclosure of the same. There is no indication that plaintiff is making any claim against DA Peterson that does not involve the initiation of prosecution or for actions that are not intimately connected with the deputy district attorneys' role in judicial proceedings. *See Cotton v. Cty. of San Bernardino*, No. EDCV 15-2314-VAP (AGR), 2016 WL 7187442, at *10 (C.D. Cal. Nov. 9, 2016) (holding that policy allegedly promulgated by district attorney of "not disclosing *Brady* evidence at the earliest opportunity . . . relate[s] to obligations 'directly connected with conduct of a trial' and requiring 'legal knowledge and the exercise of related discretion'") (quoting

---

[15] Plaintiff's Proposed 4AC indicates that "[p]laintiff will seek claims for Respondeat Superior Liability against [DA Peterson] . . . ." However, the Court cautions plaintiff that the Ninth Circuit has held that "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant. . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013) ("[T]here is no respondeat superior liability under § 1983. Rather, a government official may be held liable only for the official's own conduct."). Accordingly, plaintiff's claims against DA Peterson cannot be based on respondeat superior liability.

[16] While *Van de Kamp* involved impeachment evidence as required by *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court stated, "one cannot easily distinguish, for immunity purposes, between claims based upon training or supervisory failures related to *Giglio* and similar claims related to other constitutional matters (obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), for example)." 555 U.S. at 346.

13

*Van de Kamp*, 555 U.S. at 342, 344), *report and recommendation adopted*, No. EDCV 15-2314-VAP (AGR), 2016 WL 7176575 (C.D. Cal. Dec. 8, 2016).[17] The claim against DA Peterson is thus **DISMISSED WITHOUT LEAVE TO AMEND**.

### D. *Monell* Claims

#### 1. *Monell Claim Against the County*

Plaintiff's *Monell* claim against the County arises from an alleged "longstanding practice, pattern[,] policy[,] or custom of allowing [its] deputy district attorneys to file felony and misdemeanor criminal charges against defendants without probable cause and maliciously prosecute them." (3AC at 3.) Initially, to the extent that plaintiff is purporting to raise this claim against the County as the employer of its deputy district attorneys, as set forth above, a deputy district attorney acts on behalf of the state, and not the county, in initiating and prosecuting criminal cases. (*See supra* at 7–8.) Accordingly, as alleged, no *Monell* claim can be stated against the County based on the actions of its district attorney's office because a district attorney represents the state, and not the county, when preparing to prosecute and while prosecuting crimes. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004) ("Counties are not entitled to sovereign immunity. . . . [H]owever, the County can be held liable only if the District Attorney acted as a county officer. If the District Attorney was a state officer . . . , he is entitled to Eleventh Amendment immunity . . . and the County cannot be held liable for those acts."), *reversed and remanded on other grounds*, 547 U.S. 410 (2006); *see also Weiner*, 210 F.3d at 1031 (holding that because district attorneys are state officers when exercising their prosecutorial functions, Section 1983 claims against the county fail because the state is the relevant actor, not the county).[18]

---

[17] Further, the Court notes that district courts in this circuit generally hold that a conviction is required to establish prejudice for a Section 1983 claim based on a *Brady* violation and that, in an unpublished opinion, the Ninth Circuit noted a measure of agreement with this position. *See Ward v. City of Barstow*, No. EDCV-15-00444-DSF (KES), 2017 WL 4877389, at *15–16 (C.D. Cal. June 23, 2017) (collecting cases); *see also Puccetti v. Spencer*, 476 F. App'x 658 (9th Cir. 2011).

[18] Plaintiff's argument that the County is not entitled to Eleventh Amendment immunity because DDA Chandler "was [not] acting on behalf of the state [when she] intentionally and knowingly withh[eld] exonerating evidence" in violation of Penal Code section 141(c) is unsupported by citation to authority. (Opp. to County Defendants' MTD at 3.) Moreover, plaintiff's focus on Chandler's alleged actions is misplaced because, as set forth above, the claims

14

The Court, however, disagrees with the County Defendants that the analysis ends there. Rather, to the extent that plaintiff is purporting to challenge internal administrative policies and procedures of the district attorney's office that do "not involve prosecutorial strategy," it is possible that he may be able to state a claim against the County. *See, e.g., Goldstein*, 715 F.3d at 762 ("There can be a meaningful analytical distinction between policies and training relating to prosecutorial functions and an index made and maintained as an administrative matter.") (internal quotation marks omitted). Here, the 3AC sets forth factual allegations pertaining to one incident in which plaintiff was charged with violating "California Penal Code section 32, accessory of California Penal Code section 187 (Murder) after the fact" due to "unreasonable pressure" and based on "withh[e]ld cellphone records." (3AC at 2.) Plaintiff makes an unsupported allegation that the County has a "longstanding practice, pattern[,] policy[,] or custom" of allowing its deputy district attorneys to bring criminal charges without probable cause and with malice. (*Id*. at 3.) *See Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (the Court is not "bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted); *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (courts must "discount[] conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible"). In order to give rise to a claim against the County for any alleged administrative policy or custom, plaintiff must show that his alleged constitutional deprivation was *caused by* that custom or policy. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (under Section 1983, a municipality is liable if there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012)

---

against DDA Chandler are unavailing. The issue is whether plaintiff can maintain a *Monell* claim against the County based on its alleged custom, policy, or practice of allowing its deputy district attorneys to bring criminal charges without probable cause and with malice. As explained above, the 3AC fails in this regard.

15

("Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation.") (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008)). Finally, liability against the County may not be premised on an isolated incident such as that alleged in the complaint. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy."); *Thompson v. City of L.A.*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds, Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir. 2010) (en banc).[19]

Because it is not clear that the foregoing deficiencies of the 3AC could not be cured by amendment, plaintiff's *Monell* claim as asserted against the County is **DISMISSED WITH LEAVE TO AMEND**.

### 2. *Monell* Claim Against the City

In the same vein, plaintiff has insufficiently alleged a custom, policy, or practice for which the City could be held liable under *Monell*. The 3AC contains formulaic recitations that, for example, the City "has a longstanding practice, pattern[,] policy[,] or custom of allowing [its] police officers to arrest citizens without probable cause and maliciously prosecute them" and that it has "engaged in a repeated practice of arresting citizens for violent crimes such as murder and assault without probable cause and maliciously prosecut[ing] them." (3AC at 3.) According to plaintiff, the City's "indifference stems from an entrenched posture of deliberate indifference to the constitutional right of primarily the minority citizens who live or visit the City of Walnut Creek." (3AC at 3.) Plaintiff's allegations are conclusory and seemingly rely only on his own

---

[19] The Court notes that the analysis to determine whether an unconstitutional "policy" as opposed to an unconstitutional "custom" or "practice" differs under *Monell*. With respect to an adopted municipal policy, a single incident can serve as the basis of a *Monell* claim so long as "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

16

experience.  He does not allege an actual formal policy, unwritten custom, or longstanding practice with sufficient particularity to infer that such a custom, policy, or practice exhibits deliberate indifference to plaintiff's constitutional rights or caused the constitutional violations he alleges.  He merely assumes one exists.  Such an assumption is insufficient.

Accordingly, plaintiff's *Monell* claim as asserted against the City is **DISMISSED WITH LEAVE TO AMEND**, to allow plaintiff the opportunity to plead additional facts in support of this claim.[20]

## IV. CONCLUSION

For the foregoing reasons, the County Defendants' and City's motions are **GRANTED** as follows:

- Plaintiff's Section 1983 malicious prosecution claim is:
    - **DISMISSED WITHOUT LEAVE TO AMEND** to the extent it arises from his substantive due process rights under the Fourteenth Amendment;
    - **DISMISSED WITHOUT LEAVE TO AMEND** as asserted against DDA Chandler; and
    - **DISMISSED WITH LEAVE TO AMEND** as asserted against WCPD Does 1-10.
- Plaintiff's Section 1983 *Brady* claim as asserted against DA Peterson is **DISMISSED WITHOUT LEAVE TO AMEND**.
- Plaintiff's *Monell* claim as asserted against the County is **DISMISSED WITH LEAVE TO AMEND**.
- Plaintiff's *Monell* claim as asserted against the City is **DISMISSED WITH LEAVE TO AMEND**.[21]

---

[20] Plaintiff's reliance on *Hunter v. County of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) to argue that he has sufficiently alleged *Monell* claims against the City and County is misplaced. There, the Ninth Circuit held that the district court "prejudicially erred in refusing to instruct the jury that, for purposes of *proving* a *Monell* claim, a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Id*. at 1236 (emphasis supplied).  The court did not address whether the plaintiff had sufficiently *pled* a *Monell* claim.

[21] Given the Court's Rule 12(b)(6) analysis herein, the City's motion for a more definite statement is **DENIED AS MOOT**.

17

Any Fourth Amended Complaint must be filed by **January 15, 2019**. Failure to file a timely Fourth Amended Complaint, and/or remedy the deficiencies as discussed herein, may result in dismissal of the action. Any response thereto is due **fourteen (14) days** after plaintiff's filing.

This Order terminates Docket Numbers 18, 25, and 43.

**IT IS SO ORDERED.**

Dated: December 4, 2018

                                    **YVONNE GONZALEZ ROGERS**
                                    **UNITED STATES DISTRICT COURT JUDGE**