**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GERALD LEN COOLEY,**<br>Plaintiff**,**<br>vs.<br>**CITY OF WALNUT CREEK, ET AL.,**<br>Defendants**.** | CASE NO. 18-cv-00719-YGR<br><br>**ORDER (1) GRANTING COUNTY OF CONTRA COSTA'S MOTION TO DISMISS AND (2) GRANTING IN PART AND DENYING IN PART CITY OF WALNUT CREEK'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 53, 56 |

*Pro se* plaintiff Gerald Len Cooley brings this civil rights action against defendants the City of Walnut Creek (the "City"), City of Walnut Creek Police Detective Greg Leonard, unnamed Walnut Creek detectives ("Detective Does 1-10"), the County of Contra Costa (the "County"), deputy district attorney Alison Chandler ("DDA Chandler"), and district attorney Mark Peterson ("DA Peterson") pursuant to 42 U.S.C. section 1983 ("Section 1983") for violation of his constitutional rights. (*See generally* Fourth Amended Civil Rights Complaint ("4AC"), Dkt. No. 52.)

Now before the Court are two motions to dismiss the 4AC pursuant to Federal Rule of Civil Procedure 12(b)(6), namely one filed by the County, (*see* Dkt. No. 53 ("County's MTD")), and one filed by the City (*see* Dkt. No. 56 ("City's MTD")).[1] The matters were heard on March 26, 2019. Having carefully considered the papers submitted and the pleadings in this action, and the hearing held on March 26, 2019, and for the reasons set forth below, the Court **GRANTS** the County's motion and **GRANTS IN PART AND DENIES IN PART** the City's Motion.

**I.  BACKGROUND**

**A.  Procedural Background**

Plaintiff filed the initial complaint in this action on February 1, 2018. (Dkt. No. 1.)  On

---

[1] By order of the Court, the City refiled its motion to dismiss on March 26, 2019 as two pages of its initial brief were inadvertently omitted. *See* Dkt. No. 62.

1 March 9, 2018, he filed an amended complaint. (Dkt. No. 8.) The case was subsequently

2 reassigned to the undersigned on March 21, 2018, and plaintiff thereafter filed a motion for leave

3 to file a second amended complaint, which this Court granted. (Dkt. Nos. 12, 13, 15.)

On March 29, 2018, DDA Chandler and the County filed a motion to dismiss, (Dkt. No. 18), and plaintiff filed a motion for leave to file a third amended complaint ("3AC") two weeks later. (Dkt. No. 23.) On April 23, 2018, the City filed a motion to dismiss the 3AC and for a more definite statement. (Dkt. No. 25.) The following day, the Court granted plaintiff's motion for leave to file the 3AC and, in light of the City's motion and because the 3AC tracked the prior complaint with the exception of two added paragraphs regarding DA Peterson, the Court allowed defendants to file supplements to their pending motions, rather than entirely new motions to dismiss. (Dkt. No. 26.)[2]

While the two motions to dismiss were pending, plaintiff filed a motion for leave to file a fourth amended complaint, with a proposed complaint attached thereto. (Dkt. No. 43.) On December 4, 2018, the Court granted both motions to dismiss the 3AC, dismissing certain claims without leave to amend and the remaining claims with leave to amend. (Dkt. No. 45 ("MTD Order").) In so doing, the Court addressed the proposed substantive amendments included in plaintiff's proposed fourth amended complaint in order to "provide further guidance to plaintiff as he prepares his next amended complaint and for the sake of efficiency." (*Id*. at 1. n.1.) Specifically, the Court ruled that plaintiff's Section 1983 malicious prosecution claim was: (i) dismissed without leave to amend to the extent it arose from plaintiff's substantive due process rights under the Fourteenth Amendment; (ii) dismissed without leave to amend as asserted against DDA Chandler; and (iii) dismissed with leave to amend as asserted against Walnut Creek Police Department ("WCPD") Officer Does 1-10. The Court also ruled that plaintiff's section 1983 *Brady* claim as asserted against DA Peterson was dismissed without leave to amend, plaintiff's *Monell* claim as asserted against the County was dismissed with leave to amend, and plaintiff's

---

[2] DA Peterson joined the County's and DDA Chandler's motion to dismiss upon the filing of their supplemental brief and was thus treated as a moving party.

2

*Monell* claim as asserted against the City was dismissed with leave to amend. The Court gave plaintiff until January 15, 2019 to file an amended complaint.

Rather than file an amended complaint, plaintiff filed a notice of appeal on December 28, 2018. (Dkt. No. 46.) On January 24, 2019, the Ninth Circuit dismissed the appeal for lack of jurisdiction because this Court's order challenged in the appeal was not final or appealable. (Dkt. No. 50.) In light of the Ninth Circuit's order, this Court extended plaintiff's deadline to file a fourth amended complaint to February 5, 2019. (Dkt. No. 51.)

On February 5, 2019, plaintiff filed the operative 4AC. The 4AC asserts various Section 1983 claims, which are discussed in further detail below. The instant motions followed.

### B. Factual Background

The following facts are based on the allegations of plaintiff's 4AC:[3]

---

[3] In support of its motion to dismiss, the City asks that the Court take judicial notice of (i) the Ramey arrest warrant for plaintiff's arrest and the statement of probable cause provided in support of obtaining the arrest warrant; and (ii) excerpted portions of the transcript of the preliminary hearing held in plaintiff's related criminal action. *See* Dkt. No. 57. Courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute," Fed. R. Civ. P. 201(b), but here the parties dispute the factual assertions in both documents. Thus, the Court will only take judicial notice of the reasonably undisputed facts, such as the existence of the warrant and statement of probable cause, their filing date, the date of the arrest at issue, and the existence of the preliminary hearing transcript, among other things. Thus, for this *limited purpose*, judicial notice of the two documents is **GRANTED**. *See, e.g.*, *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115–16 (S.D. Cal. 2018) (although affidavit, warrant, and return of service were "official documents . . . appropriate for judicial notice[,]" the court only "t[ook] note of their existence as public records, rather than of reasonably disputable facts they contain[ed]"); *Beckway v. DeShong*, 717 F. Supp. 2d 908, 912 n.1 (N.D. Cal. 2010) (court took judicial notice of the existence of documents from the criminal proceeding against the plaintiff, including a transcript of the preliminary hearing and police reports, but did not accept as true the facts alleged in the documents "[s]ince it would be inappropriate to take judicial notice of a fact that is subject to reasonable dispute") (internal quotation marks omitted); *see also, e.g., Ward v. City of Barstow*, No. EDCV-15-00444-DSF (KES), 2017 WL 4877389, at *5 (C.D. Cal. June 23, 2017) (where plaintiff argued that judicial notice of search and arrest warrants and their supporting affidavits was inappropriate because the documents contained "false statements and omissions," the court judicially noticed "as facts not reasonably subject to dispute that: (1) the warrants and supporting affidavits were issued and signed by the persons and on the dates indicated on their face, and (2) the certified copies filed by Defendants accurately reflect the contents of those documents"). In finding limited judicial notice appropriate, the Court is not making a finding that the *contents* of the documents are true.

The Court also notes that plaintiff has filed several exhibits in support of his opposition to the City's motion to dismiss without an affidavit or declaration authenticating those exhibits as required by Civil Local Rule 7-5. *See* Dkt. No. 60 ("Opp. to City's MTD") at ECF pp. 7–34. The Court did not rely on any of those exhibits in its analysis herein. However, plaintiff is advised that all future filings must comply with all applicable Federal Rules of Civil Procedure and Civil Local

On August 27, 2016, Courtney Brown was murdered outside a bar and grill in Walnut Creek named Crogan's. (4AC ¶ 5.) Detective Leonard and Detective Does 1-10 were assigned to find the murderer. (*Id.*) On or around August 29, 2016, Detective Leonard and Detective Does 1-10 served an arrest and search warrant on Larry Griffin, plaintiff's cousin, for the murder. (*Id.*) They obtained Griffin's cell phone records and found unanswered calls from plaintiff "prior to, during[,] and after the murder and cellphone pings that provided the approximate location of the cellphones during the relevant times." (*Id.*)

Detective Leonard and Detective Does 1-10 called plaintiff and asked to speak with him at the police station. (*Id.* ¶ 6.) Plaintiff decided not to go to the police station since he could not afford an attorney. (*Id.* ¶ 7.) Detective Leonard and Detective Does 1-10 "obtained an arrest and search warrant and compared cellphone pings from Larry Griffin and [p]laintiff's cellphones[,] which revealed that [p]laintiff did not arrive or leave with Larry Griffin on the night of the murder." (*Id.*)

On October 5, 2016, Detective Leonard and Detective Does 1-10 arrested plaintiff for being an accessory to murder after the fact in violation of California Penal Code section 32 and took him to the police station for questioning. (*Id.* ¶¶ 1, 8.) Detective Leonard and Detective Does 1-10 told plaintiff that they did not believe he was directly involved with the murder but that they believed he had "knowledge concerning the facts of the murder and that he could [provide] the identity of other unidentified individuals that may have been involved with the murder." (*Id.* ¶ 9.) Plaintiff alleges that:

> After substantial video recorded questioning by [Detective] Leonard and Detective[] Does 1-10, for the improper purpose of incarcerating [p]laintiff in order to induce [p]laintiff into providing information he did not have concerning additional suspects or other information implicating Larry Griffin, [Detective] Leonard and [Detective] Does 1-10, knowing that cellphone records of calls from [p]laintiffs [sic] phone to Larry Griffins [sic] were unanswered and cellphone pings showed that [p]laintiff did not arrive or leave Walnut Creek with Larry Griffin on the night of the murder, lacking probable cause[,] [Detective] Leonard and [Detective] Does 1-10[] falsely . . . arrested [p]laintiff, then booked him in the Contra Costa County Detention Center in Martinez, California for a violation of Cal. Penal Code § 32, accessory of Cal.

---

Rules.

4

Penal Code § 187 (Murder) after the fact and bail was set at $500,000.
(*Id*. ¶ 10.)

On October 7, 2016, "despite the fact that cellphone records exonerated [p]laintiff," and "with malice and the specific intent to improperly induce [p]laintiff into providing information concerning the murder that he had no knowledge of," and "with the lack of probable cause," DDA Chandler filed a felony complaint against plaintiff "due to unreasonable pressure" from Detective Leonard and Detective Does 1-10. (*Id*. ¶ 11.) Plaintiff was arraigned on October 13, 2016 and was granted supervised ankle bracelet monitoring. (*Id*. ¶ 12.) DDA Chandler subsequently opposed the court's decision to release plaintiff. (*Id*.)

DDA Chandler then conspired with Detective Leonard and Detective Does 1-10 to withhold cell phone records which showed that "[p]laintiff did not arrive nor [sic] leave Walnut Creek with Larry Griffin." (*Id*. ¶ 13.) After plaintiff was appointed an attorney, the attorney discovered that no written report existed implicating plaintiff as accessor to Brown's murder. (*Id*. ¶ 16.) He also discovered that the cell phone records showed that plaintiff did not arrive in or leave Walnut Creek with Griffin on the night of the murder and asked for plaintiff's immediate release. (*Id*. ¶ 17.) Plaintiff was released on or around January 27, 2017, after having spent approximately four months in jail. (*Id*.)

On May 22, 2017, prior to plaintiff's preliminary hearing, DDA Chandler requested that the felony charges against plaintiff be dismissed "due to insufficient evidence because no evidence existed implicating [p]laintiff in the accessory of or the actual murder." (*Id*. ¶ 18.) The court granted DDA Chandler's request. (*Id*.)

Based on these allegations, plaintiff's 4AC asserts the following claims pursuant to Section 1983: (i) a malicious prosecution claim against DDA Chandler; (ii) a *Brady* claim against DA Peterson; (iii) a malicious prosecution claim against Detective Leonard and Detective Does 1-10; (iv) a false arrest claim against Detective Leonard and Detective Does 1-10; (v) a *Monell* claim against the City; and (vi) a *Monell* claim against the County. Specifically, plaintiff alleges:

> As the Contra Costa County District Attorney, Mark Peterson, a final policymaker from January 2010 until his felony conviction for perjury June 14, 2017, implemented and/or ratified a practice, policy[,] or custom of withholding

> exculpatory evidence from defendants in criminal cases. . . . [T]he policy is actionable because of the violation of his fourth amendment right not to be subjected to unreasonable searches and seizures, arrests[,] and prosecutions without probable cause. . . .
>
> [N]umerous defendants across Contra Costa County have had exculpatory evidence withheld by prosecuting attorneys who adopted the policy in violent cases such as assault to murder from 2010 until June 17, 2017, and that [p]laintiff's incident was not isolated. . . .
>
> [DA] Peterson and [the County] made a conscious and deliberate choice to fail to train or retrain its prosecuting attorneys not to withhold evidence and to provide disclosures to defense [sic] expeditiously. . . .
>
> [M]embers of the [WCPD] including [Detective] Leonard and [Doe Detectives 1-10] have engaged in a repeated practice of arresting numerous minority citizens across Contra Costa County for violent crimes such as murder and assault without probable cause and maliciously prosecuted them from 2010 until 2017[,] and [p]laintiff [sic] incident is not isolated. [Detective] Leonard and [Detectives Does 1-10] [sic] indifference stems from an entrenched posture of deliberate indifference to the constitutional right of primarily the minority citizens who live or visit the City of Walnut Creek.

(*Id.* ¶¶ 21–25 (emphases removed).)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the plaintiff has stated a claim, a court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). Leave to amend must be granted to a *pro se* litigant unless it is clear that the complaint's deficiencies cannot be cured by

6

1 amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**III. DISCUSSION**

**A. Section 1983 Malicious Prosecution Claim Against DDA Chandler and *Brady* Claim Against DA Peterson**

In summary, the Court previously dismissed without leave to amend plaintiff's malicious prosecution claim against DDA Chandler on the grounds that: (i) as asserted against her in her *individual capacity*, the claim was barred under the doctrine of prosecutorial immunity; and (ii) as asserted against her in her *official capacity*, the claim was barred under the Eleventh Amendment. (*See* MTD Order at 7–8.) As for DA Peterson, the Court previously read plaintiff's *Brady* claim against DA Peterson as being asserted against DA Peterson only in his *individual capacity*, which plaintiff did not dispute. (*See id*. at 13.) Based on that undisputed interpretation, the Court dismissed the claim without leave to amend as barred under the doctrine of prosecutorial immunity. (*See id*.) Accordingly, and for the reasons stated in the Court's previous order, the Court reaffirms its previous decision and **DISMISSES WITHOUT LEAVE TO AMEND** plaintiff's malicious prosecution claim against DDA Chandler and his *Brady* claim as asserted against DA Peterson in his *individual capacity*.

Plaintiff's *Brady* claim against DA Peterson in his *official capacity* fares no better. Specifically, plaintiff indicates that he "seek[s] claims for Respondeat Superior Liability against [DA Peterson] for implementing a practice, policy, or custom of allowing his Deputy District Attorneys to withhold exculpatory material or information[.]" (4AC ¶ 4.) As a preliminary matter, and as the Court previously advised plaintiff, "[t]here is no respondeat superior liability under [S]ection 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); MTD Order at 13 n.15. Putting plaintiff's respondeat superior allegations aside, as the Court must, plaintiff complains only about an alleged practice, policy, or custom promulgated by DA Peterson of not disclosing *Brady* evidence, and DA Peterson's purported failure to train deputy district attorneys regarding disclosure of the same. Plaintiff

7

makes no claim against DA Peterson that does not involve the initiation of prosecution or for actions that are not intimately connected with the deputy district attorneys' roles in judicial proceedings. Thus, for the same reasons plaintiff's malicious prosecution claim is barred as against DDA Chandler, plaintiff's *Brady* claim is barred as against DA Peterson. (*See* MTD Order at 8.) Moreover, other than conclusory allegations regarding a practice, policy, or custom, the complaint lacks any substantive allegations that withstand review.

Accordingly, plaintiff's Section 1983 *Brady* claim as asserted against DA Peterson in his *official capacity* is **DISMISSED WITHOUT LEAVE TO AMEND**.

### B. Section 1983 Claims Against Detective Leonard and Detective Does 1-10

#### 1. Malicious Prosecution

Plaintiff alleges malicious prosecution against Detective Leonard and Detective Does 1-10 in violation of his Fourth Amendment rights. (4AC ¶ 1.)[4] The City argues that plaintiff fails to allege facts establishing each element of his claim and that the claim is barred by qualified immunity. The Court addresses each argument in turn.

Where an actor such as a police officer, investigator, or even a prosecutor knowingly provides misinformation, conceals exculpatory evidence, or otherwise engages in wrongful conduct that was "actively instrumental in causing the initiation of legal proceedings," a claim for malicious prosecution will lie. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). To establish a malicious prosecution claim under Section 1983, a plaintiff must allege: (1) the initiation of a prosecution which ended in a termination favorable to the plaintiff; (2) lack of probable cause; (3) malice; and (4) that the prosecution was done for the purpose of denying the

---

[4] The Court notes that Detective Leonard has yet to be served. However, in its moving papers, the City indicated that "[t]o the extent [Detective] Leonard is ever properly served as a defendant to this matter, this Motion to Dismiss is also made on his behalf." City's MTD at 1 n.1.

As ordered at the hearing held on March 26, 2019, the City's counsel has notified the Court that she contacted Detective Leonard regarding acceptance of service, and he authorized her to accept service on his behalf. *See* Dkt. No. 64 ("Notice"). A copy of the notice was mailed to plaintiff on April 2, 2019. *See* Dkt. No. 65. The Court gave plaintiff a week from receipt of the notice to effectuate service on Detective Leonard. For efficiency reasons, the Court provides guidance herein with respect to the claims against Detective Leonard.

8

plaintiff's constitutional rights. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *Awabdy*, 368 F.3d at 1066–68. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted from the initiation of proceedings." *Awabdy*, 368 F.3d at 1067. "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id*.

As an initial matter, and as the Court noted in its previous order, the presumption of prosecutorial independence is an evidentiary presumption that is applicable at the summary judgment stage to direct the order of proof; "it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); *see also* MTD Order at 10. With this in mind, the Court finds the allegations in the 4AC are sufficient to withstand the City's motion to dismiss. Specifically, plaintiff alleges that he was arrested without probable cause because Detective Leonard and Detective Does 1-10 knew prior to booking him that his cell phone records did not support the theory that plaintiff was in the area of the murder when it happened or that he was in contact with the shooter. (*See* 4AC ¶ 10.) He further alleges that Detective Leonard and Detective Does 1-10 acted "for the improper purpose of incarcerating [p]laintiff in order to induce [p]laintiff into providing information he did not have concerning additional suspects or other information implicating Larry Griffin." (*Id*.)[5] Moreover, plaintiff alleges that "[p]rior to the superior court starting the preliminary hearing[,] [DDA] Chandler requested that the felony charges be dismissed against the [p]laintiff due to insufficient evidence because no evidence existed implicating

---

[5] The City's contention that plaintiff must allege specifically that he was "prosecuted" for improper purposes is unavailing. City's MTD at 12. At oral argument, the City cited *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478 (1998) and *Moore v. City of Oakland*, No. 14-cv-05637-JSC, 2015 WL 333058 (N.D. Cal. Jan. 23, 2015) in support thereof. However, neither case stands for the proposition proffered.

[p]laintiff in the accessory of or the actual murder." (*Id.* ¶ 18.)[6] In support of the fourth element, namely that Detective Leonard and Detectives Does 1-10 acted for the purpose of denying plaintiff's constitutional rights, plaintiff relies on the following statement in the 4AC: "[Detective] Leonard and Detective Does 1-10 [acted] for the improper purpose of incarcerating [p]laintiff in order to induce [p]laintiff into providing information he did not have concerning additional suspects or other information implicating Larry Griffin[.]" (*Id.* ¶ 10; *see also* Opp. to City's MTD at 5.) According to plaintiff, "[t]his statement clearly implicates [sic] [that] City Defendants acted for the purpose of denying his Fourth Amendment rights . . . ." (Opp. to City's MTD at 5.) The Court agrees. (*See also* 4AC ¶ 1 ("Plaintiff claims that his Fourth Amendment rights were violated when [Detective Leonard and Detective Does 1-10] . . . made the decision to maliciously prosecute [p]laintiff . . . .").) In sum, the Court finds that these allegations withstand the City's motion to dismiss.

As for the City's contention that plaintiff's malicious prosecution clam is barred by qualified immunity, that argument fails since it hinges on the contents of the statement of probable cause over which the City seeks judicial notice. (*See* City's MTD at 11 ("Here, taking judicial notice of the contents of the Statement of Probable Cause . . . , which was the basis for the Ramey Warrant issued to Det. Jeha . . . , there was still sufficient sufficient indicia of probable cause to obtain the Ramey Warrant for [p]laintiff's arrest.").) For the reasons previously discussed, the Court declines to accept as true the facts alleged in the statement of probable cause. (*See supra* at 3 n.3.)

---

[6] The City's argument that this allegation fails to plead sufficiently "termination favorable to the plaintiff" is premised on the excerpted portions of the transcript over which the City seeks judicial notice. *See* MTD at 14. For the reasons previously discussed, the Court declines to accept as true the facts alleged in the transcript. *See supra* at 3 n.3.

Moreover, neither *Awabdy* nor *Fetters v. Cty. of L.A.*, 243 Cal. App. 4th 825 (2016), which the City relied on at oral argument, requires plaintiff to plead more with respect to the favorable termination element of his malicious prosecution claim. Rather, DDA Chandler's request for dismissal "because no evidence existed implicating [p]laintiff" constitutes a showing of a favorable outcome as it establishes, for pleading purposes, plaintiff's innocence. 4AC ¶ 18.

Accordingly, the City's motion to dismiss preemptively plaintiff's malicious prosecution claim against Detective Leonard and Detectives Does 1-10 is **DENIED**.[7]

### 2. False Arrest

With respect to plaintiff's Section 1983 false arrest claim against Detective Leonard and Detective Does 1-10, the City is correct that plaintiff has amended his complaint numerous times and has never before moved or been granted leave by this Court to add such a claim to this action. However, when balanced against the fact of plaintiff's *pro se* status, as well as the rules liberally favoring amendment of a complaint,[8] the Court finds that the interests of justice are best served by allowing plaintiff to plead this new claim in his 4AC.[9]

"A claim for unlawful arrest is cognizable under Section 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

As stated above, the 4AC alleges that plaintiff was arrested without probable cause because Detective Leonard and Detective Does 1-10 knew prior to booking him that his cell phone records did not support the theory that plaintiff was in the area of the murder when it happened or that he was in contact with the shooter. (*See* 4AC ¶ 10.) Drawing reasonable inferences in favor of plaintiff, the Court finds that plaintiff has sufficiently alleged facts showing that his arrest was

---

[7] As used herein, the Court notes that the reference to "Detective Does 1-10" is a general one. If ever substituted, the Court reserves on whether the specific substitution would warrant a different result.

[8] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is applied even more liberally to pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).

[9] The Court notes the City's request that "[i]f the Court is inclined to allow [p]laintiff to plead this new claim in his Fourth Amended Complaint, the City [get] the opportunity to brief more substantively and materially the flaws in [p]laintiff's new claim which would nonetheless require its dismissal." MTD at 8 n.3. Because the City was given the opportunity to address plaintiff's false arrest claim at oral argument, the request is denied as moot.

11

without probable cause.[10] The City's motion to dismiss preemptively plaintiff's false arrest claim as asserted against Detective Leonard and Detective Does 1-10 is therefore **DENIED**.[11]

### C. *Monell* Claims

#### 1. *Monell* Claim Against the County

In general, counties are liable under Section 1983 for acts by their employees that are caused by an official policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 694 (1978). Here, however, the alleged employees against whom plaintiff complains are "Contra Costa Deputy District Attorney Mark Peterson and Deputy District Attorney Alison Chandler." (4AC ¶ 3.) As indicated in the Court's previous order, district attorneys and deputy district attorneys act on behalf of the *state*, and not the county, when initiating and prosecuting criminal cases. (*See* MTD Order at 8.) Accordingly, as alleged, no *Monell* claim can be stated against the County based on the actions of its district attorney's office because a district attorney represents the state, and not the county, when preparing to prosecute and while prosecuting crimes. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004) ("Counties are not entitled to sovereign immunity. . . . [H]owever, the County can be held liable only if the District Attorney

---

[10] In its reply brief, the City previews its argument in opposition to plaintiff's false arrest claim, namely that "he cannot show he was arrested without probable cause . . . ." Dkt. No. 61 at 4. Because this argument is based on the contents of the Ramey warrant or statement of probable cause over which the City seeks judicial notice, it fails. For the reasons previously discussed, the Court declines to accept as true the facts asserted in the warrant and statement of probable cause. *See supra* at 3 n.3.

[11] In light of the City's request for judicial notice, plaintiff argues in his opposition to the City's motion that his false arrest claim "should not be dismissed because his arrest was based on judicial deception." Opp. to City's MTD at 2. Specifically, he contends that "the supporting affidavit authored by Detective Jeha was judicially deceptive because Jeha deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Id*. at 3; *see also id*. ("[T]he magistrate would not have issued the arrest warrant had Jeha not deliberately made false statements in his statement of probable cause concerning the time and location of [p]laintiff's vehicle and cellphone."). As plaintiff concedes, such allegations are noticeably absent from the 4AC as he is "[f]or the first time . . . now aware of the specific statements made by Jeha . . . ." *Id*. at 3. Indeed, Detective Jeha is not named as a defendant in the 4AC.

To the extent plaintiff seeks to substitute Detective Jeha for Doe 1 and assert a false arrest claim for judicial deception based on Detective Jeha's inclusion of material false statements in the affidavit submitted in support of the warrant application, he may do so in his Fifth Amended Complaint.

12

acted as a county officer. If the District Attorney was a state officer . . . , he is entitled to Eleventh Amendment immunity . . . and the County cannot be held liable for those acts."), *reversed and remanded on other grounds*, 547 U.S. 410 (2006); *see also Weiner v. San Diego Cty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) (holding that because district attorneys are state officers when exercising their prosecutorial functions, Section 1983 claims against the county failed because the state was the relevant actor, not the county).

Because plaintiff remains unable to allege a *Monell* claim against the County despite the 4AC being the *fifth* iteration of his complaint, plaintiff's *Monell* claim against the same is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2. *Monell* Claim Against the City

Plaintiff's *Monell* claim against the City also fails. While a city may also be liable under Section 1983 for actions of its employees caused by the city's official policies or customs, here, plaintiff's allegations, again, are "conclusory and seemingly rely on his own experience." MTD Order at 16–17; *see also Ragan v. Cty. of Humboldt Dep't of Health & Human Servs.*, No. 16-cv-05580-RS, 2017 WL 878083, at *7 (N.D. Cal. Mar. 6, 2017) (finding that plaintiffs insufficiently alleged a custom, policy, or practice to establish *Monell* liability against the county because they only pleaded actions "related to their own experience"). While plaintiff references "a repeated practice of arresting numerous minority citizens across Contra Costa County for violent crimes such as murder and assault without probable cause," he does not allege an actual formal policy, unwritten custom, or longstanding practice with sufficient particularity to infer that such a policy, custom, or practice exhibits deliberate indifference to plaintiff's constitutional rights or caused the constitutional violations he alleges. (4AC ¶ 25.) He merely assumes one exists. As the Court previously explained, such as an assumption is insufficient. (*See* MTD Order at 17.)

Because plaintiff has failed to cure the deficiencies in his *Monell* claim against the City, and because he indicates no ability to do so in his opposition to the City's motion to dismiss, (*see* Opp. to City's MTD at 6 (merely repeating verbatim paragraph 25 of the 4AC without providing further argument)), plaintiff's *Monell* claim against the City is **DISMISSED WITHOUT LEAVE TO AMEND**.

**IV. CONCLUSION**

For the foregoing reasons, the County's motion to dismiss is **GRANTED**, and the City's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **ORDERS** as follows:

- All claims asserted against DDA Chandler, DA Peterson, and the County are **DISMISSED WITHOUT LEAVE TO AMEND**.
- The City's preemptive motion to dismiss plaintiff's Section 1983 malicious prosecution claim as asserted against Detective Leonard and Detective Does 1-10 is **DENIED**.
- The City's preemptive motion to dismiss plaintiff's Section 1983 false arrest claim as asserted against Detective Leonard and Detective Does 1-10 is **DENIED**.
- Plaintiff's *Monell* claim as asserted against the City is **DISMISSED WITHOUT LEAVE TO AMEND**.

The Court understands that plaintiff intends to assert claims for malicious prosecution and false arrest against Detective Jeha. The Court grants the request to so amend. The Court further understands that the City's counsel has agreed to accept service of the Fifth Amended Complaint on Detective Jeha's behalf. (*See* Notice.)

Plaintiff's Fifth Amended Complaint, which shall contain only the non-dismissed claims and the new claims against Detective Jeha, shall be filed by no later than **Thursday, May 9, 2019.** The response of Detectives Leonard and Jeha shall be due **fourteen (14) days** after plaintiff's filing.

The Court advises plaintiff that a Handbook for Pro Se Litigants, which contains helpful information about proceeding without an attorney, is available in the Clerk's office or through the Court's website, http://cand.uscourts.gov/pro-se.

The Court also advises plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. **There is no fee for this service**. To make an appointment with the Legal Help Center in San Francisco, plaintiff may visit the San Francisco Courthouse, located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, 94102, or call 415/782-8982. To make an appointment with the Legal Help Center in

Oakland, plaintiff may visit the Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California, 94612, or call 415/782-8982. The Help Center's website is available at http://www.cand.uscourts.gov/helpcentersf.

This Order terminates Docket Numbers 53 and 56.

**IT IS SO ORDERED.**

Dated: April 9, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**