UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD LEN COOLEY,<br>    Plaintiff,<br><br>vs.<br><br>CITY OF WALNUT CREEK DETECTIVE WILLIAM JEHA,<br><br>    Defendants. | Case No.: 4:18-cv-719-YGR<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 194 |

Plaintiff Gerald Len Cooley brings this civil rights action against the sole remaining defendant Walnut Creek Police Detective William Jeha pursuant to 42 U.S.C. section 1983 for false arrest in violation of the Fourth Amendment and for deliberate fabrication of evidence in violation of the Fourteenth Amendment.

Presently before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 194.) The matter was heard on June 22, 2021. Having carefully considered the papers submitted, the oral argument of the parties, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the motion for summary judgment.

I.  **BACKGROUND**

The parties agree on the basic facts of this case. Thus:

On April 27, 2016, at 1:28 a.m., Courtney Brown was shot outside Crogan's Bar and Grill in Walnut Creek. (Plaintiff's Separate Statement of Undisputed Material Facts in Support of Opposition ("PSUMF"), Dkt. No. 198-1, Undisputed Fact 1.) Jeha, a twenty-year veteran police

officer, was a detective for the Walnut Creek Police Department ("WCPD") and served as lead investigator for this homicide. (*Id.*, Undisputed Fact 2.) On the way to the hospital before he died, Brown identified Larry Griffin as his assailant. (*Id.*, Undisputed Fact 4 (citing Jeha Decl. ¶ 3).) Griffin was subsequently arrested, prosecuted, and later convicted for Brown's murder. (*Id.*, Undisputed Fact 3.)

Cooley is Griffin's cousin. (*Id.*, Undisputed Fact 4.) On September 22, Jeha sought a Ramey warrant for Cooley's arrest for being an accessory to Brown's murder after the fact. (*Id.*, Undisputed Portion of Fact 19 (citing Jeha Decl., Ex. D ("Warrant")).) Jeha presented to Contra Costa County Superior Court Judge Steve Austin an affidavit in support of the proposed warrant and an accompanying statement of probable cause, which included the following:

- Griffin's girlfriend Keyona Hodges admitted picking up Griffin from a house in Antioch around 3:00 a.m. on the night of the shooting. Hodges reported seeing Cooley come out of the house and get into a light colored Lexus SUV and drive away.

- Cooley's girlfriend Sabrina Bagsby stated that she possessed a light blue 2004 Lexus SUV and that Cooley had the vehicle on the night of the shooting and returned it the next morning. According to Bagsby, Cooley told her that he had to go to his cousin's house around the corner and that he would be right back. Cooley never returned that night, so she sent the following text messages: "Bring me my keys to my car it is 4 in the morning I'm done with u!" and "R I'm call the police." Bagbsy later reported that Cooley admitted to being at Crogan's the night of the shooting.

- The Learn License Plate Reader captured Bagsby's vehicle at an intersection less than 50 yards from the shooting location two minutes after the shooting. The vehicle was then captured seventeen minutes later on EB Hwy 4, in the Pittsburg/Antioch corridor.

- Daryl Holcombe, the digital forensic expert for the Contra Costa County District Attorney's Office, "conducted cell phone records analysis on all phone numbers called by Griffin's phone on the night of the shooting. Holcombe reported Griffin's and Cooley's phone GPS locations mirrored each other. According to the data Holcombe analyzed, Griffin's phone GPS locations and times were consistent with the call times and locations for Cooley's phone. Griffin and Cooley's phones were in Walnut Creek at the same general times (0009 and 0016 respectively), then on EB Hwy 4, and then Antioch (0146 and 0147 hours respectively)."

(Warrant, Statement of Probable Cause.)

Cooley proffers the following evidence regarding the submission: Holcombe did not analyze GPS data from either Griffin or Cooley's phones. (PSUMF, Pl. Add'l Fact 27, 36.) Rather, Holcombe analyzed Griffin's and Cooley's call detail records produced by the cell phone provider. (*Id.*, Pl. Response Disputing Fact 5 (citing, *inter alia*, Tomasulo Declaration in Support of Opposition, Ex. 1, Holcombe Depo. Tr. 45:17–20.)) This type of data enabled Holcombe to identify the cell phone towers with which the cell phones communicated and to determine the 120-degree coverage area, known as the sector, for the respective tower. (*Id.*, Pl. Response Disputing Fact 6.) Holcombe then created shaded areas of three-mile radius in a PowerPoint presentation to represent Cooley's approximate locations on the night of the shooting. (*Id.*, Pl. Response Disputing Fact 9 (citing Tomasulo Decl., Exh. 3, Holcombe's PowerPoint Presentation of Analysis of Cooley's Call Detail Records).) Holcombe determined that Cooley's phone could be located anywhere within a three-mile radius created by the 120-degree coverage area of the tower with which Cooley's phone communicated. (*Id.*, Pl. Add'l Fact 24.)

According to Cooley, Holcombe testified that call detail record data is less precise in determining a phone's location than GPS data. (*Id.*, Pl. Add'l Fact 38.) For example, his PowerPoint presentations of his cell site location analysis showed that, less than two hours prior to the shooting, Griffin's phone and Cooley's phone were somewhere within a three-mile area encompassing Walnut Creek. (*Id.*, Pl. Response Disputing Fact 17.) Holcombe also concluded that, shortly after the shooting, Griffin's phone was located within an area that encompassed both Pittsburg and Antioch. (*Id.*) Cooley also claims that Holcombe denied telling Jeha that Griffin and Cooley's phone GPS locations mirrored each other and that this investigation was not the first time that Jeha relied on Holcombe's cell site location analysis. (*Id.*, Pl. Add'l Fact 32, 35.)

Nonetheless, Jeha submitted:

> From my assessment of the information gathered in my investigation, there is sufficient cause to believe Gerald Cooley aided Griffin in the shooting death of Brown, as well [as him] having knowledge of said act. I base this belief on the fact that Cooley had possession or was at least in the Lexus SUV which was captured in Walnut Creek at the time of shooting. *Inspector Holcombe's digital forensic data analysis of GPS coordinates of Cooley's phone, revealed good cause that Griffin and Cooley were most likely together during and after the shooting.* Also, consistent statements from Hodges put Cooley and Griffin

3

together after the murder and then Cooley getting to the Lexus SUV. Statements from Bagsby regarding Cooley telling her he was going to his cousin's house and Cooley admitting to her he was in Walnut Creek during the shooting, work to reinforce my probable cause. With the above mention[ed] facts, I seek a Ramey Arrest warrant for Gerald Cooley for PC 32.

(Warrant (emphasis supplied.))

California Penal Code Section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Cal. Penal Code § 32.

Judge Austin signed the warrant based on Jeha's submission. On October 5, Cooley was arrested and later charged for being an accessory to Brown's murder and jailed in 23-hour lockdown. (PSUMF, Undisputed Portion of Fact 19 and Pl. Add'l Fact 40.) Cooley was released from jail four months after his arrest because the district attorney wanted to further investigate the relevant cell phone records. (*Id.*, Pl. Add'l Fact 41.) The charge against Cooley was ultimately dropped. (*Id.*, Pl. Response to Disputed Fact 22.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). "[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation marks omitted).

A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the summary judgment context, the court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III. ANALYSIS

Jeha moves for summary judgment on the basis of purportedly uncontroverted evidence demonstrating that (1) Cooley's arrest did not involve judicial deception in violation of his Fourth Amendment; (2) Jeha did not fabricate any evidence in the warrant application in violation of Cooley's Fourteenth Amendment; and (3) Jeha is entitled to qualified immunity for both claims. The Court considers each ground for the motion in turn.

### A. FALSE ARREST

With respect to his false arrest claim, Cooley does not argue that Jeha's warrant application lacked probable cause on its face. Rather, Cooley contends that the application contained false misrepresentations about Cooley's location, thereby asserting a judicial deception theory of liability. "To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant [1] 'deliberately or recklessly made false statements or omissions [2] that were material to the finding of probable cause.'" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)); )); *see also Chism v. Washington State*, 661 F.3d 390, 387 (9th Cir. 2011) ("For the [plaintiff's] judicial deception claim to survive summary judgment, the [plaintiff's] 'must 1) make a substantial showing of [the officer's] deliberate falsehood or reckless disregard for the truth and 2) establish that but for the honesty, the [arrest] would not have occurred.'") (quoting *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997)).

#### 1. DELIBERATE OR RECKLESS MISREPRESENTATION

The plaintiff "need not establish specific intent to deceive the court." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083–84 (9th Cir. 2011) (citing *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997)). Indeed, "[t]o survive summary judgment, [a plaintiff] need only make

5

a substantial showing of a deliberate or reckless omission, not provide 'clear proof.'" *Id.* at 1087 (quoting *Liston*, 120 F.3d at 974) (internal quotation marks omitted). Once a substantial showing of "deliberate or reckless false statements and omissions" has been made, "'the question of intent or recklessness is a factual determination' that must be made by the trier of fact." *Chism*, 661 F.3d at 387–88 (quoting *Liston*, 120 F.3d at 974).

Here, Jeha does not deny that Holcombe's analyses of Griffin's and Cooley's cell phone locations were based on data from cell phone towers, as opposed to GPS data, and therefore only showed their "general positions." (Dkt. No. 194 at 10.) Instead, Jeha argues that "incorrectly describ[ing] the cell phone data generally as GPS data" is simply his "use[ of] poor language" and that such allegations of negligence or innocent mistake are insufficient to prove judicial deception. (*Id.* at 10, 21.)

However, whether Jeha, in fact, made a mistake is a question for the trier of fact as Cooley has made a substantial showing of a deliberate or reckless false statement. *See Chism*, 661 F.3d at 387–88. First, Cooley points to the fact that Jeha's statement of probable cause refer to GPS data not only once but three times. Moreover, it is undisputed that Jeha is a seasoned investigator with twenty years of experience as a police officer. Indeed, he has worked with Holcombe in past investigations involving cell phone records. Lastly, Holcombe's PowerPoint presentations themselves show large shaded areas rather than precise pinpoints of Griffin's and Cooley's locations. Construed in the light most favorable to Cooley, these facts present sufficient evidence to support the inference that Jeha intentionally or recklessly mischaracterized Holcombe's cell phone location analysis in his statement of probable cause. Accordingly, the Court concludes that a genuine dispute exists as to the first element.

### 2. MATERIALITY

Whether a false or omitted statement was "material" to the finding of probable cause is a question of law. *See KRL*, 384 F.3d at 1117. The materiality element "requires the plaintiff to demonstrate that the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Smith*, 640 F.3d at 937; *see also Bravo*, 665 F.3d at 1083–84 ("To determine the materiality of omitted facts, [a court] consider[s] whether the affidavit, once

corrected and supplemented, establishes probable cause.") (citation and internal quotation marks omitted). "If probable cause remains after amendment, then no constitutional error has occurred." *Bravo*, 665 F.3d at 1084 (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009), and *Liston*, 120 F.3d at 973–74).

The Supreme Court has declined to articulate a "neat set of legal rules" for evaluating probable cause, and instead directs judges to consider the "totality-of-the-circumstances" when deciding whether to issue a warrant. *Illinois v. Gates*, 462 U.S. 213, 230, 232 (1983). Under Ninth Circuit authority, a finding of probable cause "must be based on 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 938 (9th Cir. 2020) (quoting *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995)) (internal quotation marks omitted).

Here, the Court finds that Jeha's reference to Holcombe's "analysis of GPS coordinates of Cooley's phone," Holcombe's purported report that "Griffin's and Cooley's GPS locations mirrored each other," and Jeha's conclusion that "Griffin and Cooley were most likely together during and after the shooting" were material to the probable cause determination. Had Holcombe's analysis been properly characterized as indicating only that Griffin and Cooley's phones were in the same general vicinity at certain times throughout the night of the shooting, the statements by Hodges and Bagsby and the license plate reader data, without the precision offered by Holcombe's purported analysis of GPS data, would not have supported probable cause to issue the arrest warrant for Cooley being accessory after the fact.

Because Cooley has raised a genuine dispute of fact as to judicial deception, the Court **DENIES** the motion for summary judgment as to his Fourth Amendment claim for false arrest.

### B. DELIBERATE FABRICATION OF EVIDENCE

"To prevail on a [section] 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). A plaintiff can establish a claim of deliberate fabrication by circumstantial or direct evidence. "For

example, evidence that officials 'continued their investigation of [a person] despite the fact that they knew or should have known that he was innocent' can raise the inference that the investigator has an 'unlawful motivation' to frame an innocent person." *Id.* at 793 (citation omitted). "Or deliberate fabrication can be shown by direct evidence, for example, when 'an interviewer . . . deliberately mischaracterizes witness statements in her investigative report.'" *Id.* (citation omitted). In cases involving direct evidence, the investigator's knowledge or reason to know of the plaintiff's innocence need not be proved. *Id.*

As discussed above, a plausible inference can be made of an intentional or reckless mischaracterization of Holcombe's cell phone location analysis. *See Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (explaining that both "an interviewer who deliberately mischaracterizes witness statements" and "an investigator who purposefully reports that she has interviewed witnesses, when she has actually only attempted to make contact with them, deliberately fabricates evidence."). The statements by Jeha in the application for Cooley's arrest warrant are akin to attributing false statements to an interviewee or falsely reporting that interviews took place when they had not, situations that the Ninth Circuit has previously recognized as rising to the level of a deliberate misrepresentation. *See id.*

Moreover, having found that Jeha's statements regarding Holcombe's analysis of GPS data were material to the probable cause determination for the arrest warrant, the Court likewise finds that there is sufficient evidence from which to conclude that the misrepresentations caused Cooley's deprivation of liberty. *See Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) ("To establish causation, [the plaintiff] must raise a triable issue that the fabricated evidence was the cause in fact and proximate cause of his injury.").

Accordingly, the Court **DENIES** the motion for summary judgment as to his Fourteenth Amendment claim for deliberate fabrication of evidence.

### C. QUALIFIED IMMUNITY

Cooley also moves for summary judgment on the basis of qualified immunity. "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting

the injury, . . . show the officer's conduct violated a [federal] right[.]'" *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (citation omitted).

With respect to the first prong, although there are genuine issues of fact as to the merits of Cooley's claims, the Court's discussion in the previous sections demonstrates that he has made an adequate showing that Jeha violated his constitutional rights.

With respect to the second prong, the Ninth Circuit has "already held that governmental employees are not entitled to qualified immunity on judicial deception claims." *Chism*, 661 F.3d at 393. If a state official "submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, . . . he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost." *Id.* (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1387 (9th Cir. 2002)). The same is true for the deliberate fabrication claim. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.").

Accordingly, the Court **DENIES** the motion for summary judgment on the basis of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Jeha's motion for summary judgment is **DENIED**.

This Order terminates Docket Number 194.

**IT IS SO ORDERED**.

Date: July 1, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**